## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

DAWN M. K.,[1]                          )        Civil Action No. 7:25-CV-00463
                                        )
    Plaintiff,                          )
                                        )        CLERKS OFFICE US DISTRICT COURT
                                        )        AT ROANOKE, VA
v.                                      )        **REPORT &**   FILED
                                        )        **RECOMMENDATION**  March 30, 2026
COMMISSIONER OF SOCIAL                  )        LAURA A. AUSTIN, CLERK
SECURITY,                               )        BY: /s/ E. Jones
                                        )        DEPUTY CLERK
    Defendant.                          )        By: C. Kailani Memmer
                                        )        United States Magistrate Judge

Plaintiff Dawn M. K. (Dawn), represented by counsel, challenges the final decision of the Commissioner of Social Security (Commissioner) finding her not disabled and therefore ineligible for supplemental security income (SSI). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B).[2] Neither party has requested oral argument, and oral argument would not aid in the decisional process. Thus, this case is ripe for decision.

Having considered the administrative record, the parties' filings, and the applicable law, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be reversed and remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the merits of the Commissioner's final decision, judicial review is limited to assessing whether the administrative law judge (ALJ) applied the correct legal

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in Social Security opinions.

[2] On October 10, 2023, the presiding District Judge referred Social Security cases in the Roanoke Division to me. (Standing Order 2023-18.)

1

standards and whether substantial evidence supports the ALJ's factual findings. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation modified); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589).

Further, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). ALJs must not only reach a conclusion supported by substantial evidence but must also "build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95.

## CLAIM HISTORY

Dawn was born in 1973 and has an associate's degree.[3] R. 197, 335. On May 2, 2022, Dawn applied for SSI and alleged a disability onset date of September 24, 2021. R.

---

[3] Pursuant to the DIB regulations, "[i]f you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. §§ 416.963(b)-(e), 404.1563(b)-(e). "In making the determination of whether a person can make an adjustment to other work, advancing age is an increasingly limiting factor in the claimant's ability to adjust to other work." *Tracey H. v. Kijakazi*, No. 4:20-CV-40, 2022 WL 731535, at *4 (W.D. Va. Mar. 10, 2022) (citing 20 C.R.F. § 404.1563(a)). Here, Dawn was 50 years old at the time of the ALJ's decision. R. 197, 31. However, none of the parties raised age as an issue, so the court declines to *sua sponte* raise this issue.

197. Importantly, Dawn's counsel at the ALJ hearing amended the disability onset date to April 25, 2022, and the ALJ accepted the amended disability onset date. R. 60, 17. Dawn's claim was initially denied on August 22, 2022, and again upon reconsideration on April 6, 2023. R. 106, 112. On June 5, 2023, Dawn requested an ALJ hearing. R. 115. On April 11, 2024, the ALJ held a hearing, and Dawn was represented by counsel. R. 39. Ms. EnJouli McGoogan testified as an impartial vocational expert. R. 61-65.

On May 23, 2024, the ALJ issued an "Unfavorable Decision" analyzing Dawn's claim under the familiar five-step process,[4] finding her not under a disability since April 25, 2022, through the date of decision, and denying her claim for SSI. R. 31. At the first step, the ALJ found Dawn had not engaged in substantial gainful activity since April 25, 2022. R. 19. At the second step, the ALJ found Dawn had the following severe impairments: (1) degenerative disc disease of the lumbar spine, (2) osteoarthritis of the left knee, (3) fibromyalgia, (4) bilateral carpal tunnel syndrome, (5) post-traumatic stress disorder, (6) social anxiety, and (7) bipolar disorder. R. 19-20. At the third step, the ALJ found Dawn's impairments, either individually or in combination, did not meet or equal a listed impairment. R. 20.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to the claimant's past relevant work; and if not, (5) whether the claimant can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *see also* 20 C.F.R. § 416.920. The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. *Oakes v. Kijakazi*, 70 F.4th 207, 211 (4th Cir. 2023) (citing *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017)). At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ determined that Dawn retained the residual functional capacity (RFC) to perform light work[5] with the following limitations:

> [E]xcept she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and kneel, but can never climb ladders, ropes, or scaffolds. She is limited to no more than frequent handling and she must avoid concentrated exposure to dust, fumes, odors, gases, environments with poor ventilation, wetness, humidity, temperature extremes, and vibration. She must avoid hazards, such as unprotected heights, moving machinery, and commercial driving. In addition, the claimant is limited to jobs that have only simple tasks, decisions, and instructions, e.g., work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time, usually no more than 30 days. She is limited to jobs that are not performed in a production-rate environment, such as an assembly line, and to jobs with relatively few workplace changes. She must also avoid occupations requiring more than occasional supervision or more than occasional interaction with coworkers or the general public.

R. 22. At the fourth step, the ALJ found Dawn had no past relevant work. R. 30. At the fifth step, based on testimony from Ms. McGoogan, the ALJ identified the following jobs, which exist in significant numbers in the national economy, that Dawn can perform: (1) routing clerk, (2) mail clerk, and (3) cleaner housekeeper. R. 30. Thus, the ALJ

---

[5] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

determined Dawn was not disabled from April 25, 2022, through the date of decision of May 23, 2024. R. 31.

Dawn's appeal to the Appeals Council was denied on May 15, 2025. R. 1. This appeal followed.

Because this court writes primarily for the parties who are familiar with the facts, the court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Analysis section below.

## ANALYSIS

### I.    Summary of the parties' arguments

Dawn presents the following three assignments of error and several subsidiary arguments. (Pl.'s Br., ECF No. 17, at 11-24.) For her first assignment of error, Dawn argues the ALJ's RFC findings about her mental impairments are not supported by substantial evidence. (*Id.* at 11.) Within the first assignment of error, Dawn submits that the ALJ failed to adequately explain his evaluation of the medical opinions in the disability determination explanation. (*Id.* at 13.) Also, Dawn faults the ALJ for failing to build a logical bridge between his RFC findings and his accommodations for her moderate limitations in the four Paragraph B criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 15-17.) Further, Dawn maintains the ALJ failed to address whether she could stay on task for an eight hour workday and sustain a regular work schedule. (*Id.* at 17.)

For her second assignment of error, Dawn contends the ALJ's RFC findings about her physical impairments are not supported by substantial evidence. (*Id.* at 18.) Dawn asserts the ALJ failed to make specific findings about whether her physical impairments would cause her episodes of pain necessitating breaks and how often those breaks would

occur. (*Id.* at 19.) Moreover, according to Dawn, the ALJ failed to make a specific finding on whether she would be able to maintain static work given her physical impairments, and the ALJ also erred by not conducting a function-by-function analysis. (*Id.* at 19-21.) Dawn contends the ALJ failed to evaluate whether her physical impairments would prevent her from working an eight hour day. (*Id.* at 20.) Dawn challenges the ALJ's persuasiveness finding about the medical opinion from Marcia Love, physician assistant certified. (*Id.* at 22-23.)

For her third assignment of error, Dawn avers the ALJ's assessment of her subjective allegations is not supported by substantial evidence. (*Id.* at 23.) Also, Dawn argues the ALJ's assessment of her subjective allegations failed to build a logical bridge between the evidence and his conclusions. (*Id.* at 24.)

In response, the Commissioner argues that substantial evidence supports the ALJ's evaluation of Dawn's mental impairments and mental RFC, and the ALJ built a logical bridge between the evidence and the mental RFC findings. (Def.'s Br., ECF No. 19, at 5-6.) Moreover, the Commissioner contends the ALJ explained that the RFC incorporated limitations for Dawn's moderate Paragraph B criteria mental limitations. (*Id.* at 6-8.) According to the Commissioner, the ALJ appropriately evaluated the medical opinion evidence. (*Id.* at 11.) Also, the Commissioner avers the ALJ appropriately made persuasiveness findings about the medical opinion evidence. (*Id.* at 9.) The Commissioner maintains substantial evidence supports the ALJ's evaluation of Dawn's physical impairments and physical RFC. (*Id.* at 13-17.) Finally, the Commissioner contends the ALJ applied the appropriate legal standards in his evaluation of Dawn's subjective allegations. (*Id.* at 18-21.)

**II.    In the evaluation of Dawn's symptoms—at step two of SSR 16-3p—the ALJ failed to apply *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020), to her fibromyalgia symptoms**

As discussed below, SSR 16-3p provides how ALJs must evaluate a claimant's symptoms. Here, I find the ALJ erred at the second step of SSR 16-3p with respect to Dawn's fibromyalgia because the ALJ should have applied *Arakas* at step two of SSR 16-3p.

### 1. SSR 16-3p creates a two-step process for evaluating symptoms

The Social Security regulation of SSR 16-3p "set out a two-step framework for ALJs to evaluate symptoms." *Donald O. v. Bisignano*, No. 4:24-CV-00015, 2025 WL 2181411, at *4 (W.D. Va. Aug. 1, 2025) (citing *Lewis*, 858 F.3d at 864); *see also* SSR 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017). At the first step, "we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, *3.

At the second step of SSR 16-3p, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." *Id.* For the second step of SSR 16-3p, the Fourth Circuit in *Arakas* held "objective evidence is *not* required to find the claimant disabled. SSR 16-3p recognizes that 'symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques.'" *Paul B. v. Kijakazi*, No. 6:20-CV-00078, 2022 WL 989242, at *7 (W.D. Va. Mar. 31, 2022) (quoting *Arakas*, 983 F.3d at 95) (emphasis original).

### 2. *Arakas* prohibits the consideration of objective medical evidence—at SSR 16-3p's step two—for fibromyalgia symptoms

Under *Arakas*, step two of SSR 16-3p is especially important for an ALJs' disability determinations regarding claimants who have fibromyalgia. "Fibromyalgia is a disorder of unknown cause characterized by chronic widespread soft-tissue pain particularly in the neck, shoulders, back, and hips, which is aggravated by the use of the affected muscles and accompanied by weakness, fatigue, and sleep disturbances." *Janel G. v. Kijakazi*, No. 5:20-CV-00018, 2021 WL 3076407, at *9 (W.D. Va. July 21, 2021) (quoting *Arakas*, 983 F.3d at 91) (internal quotation marks omitted). "In *Arakas*, the Fourth Circuit noted that fibromyalgia is a condition that does not necessarily create objective findings, and it was improper for the ALJ to rely on the absence of objective findings to discount the plaintiff's subjective statements regarding her pain and limitations." *Jennifer L. v. Kijakazi*, No. 7:20-CV-442, 2022 WL 1126424, at *9 (W.D. Va. Feb. 7, 2022), *report and recommendation adopted*, No. 7:20-CV-00442, 2022 WL 780417 (W.D. Va. Mar. 14, 2022) (quoting *Arakas*, 983 F.3d at 97). Thus, "'[p]hysical examinations of patients with fibromyalgia will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions.'" *Lisa T. v. Comm'r of Soc. Sec. Admin.*, No. 5:21-CV-00068, 2023 WL 2423591, at *6 (W.D. Va. Mar. 9, 2023), *report and recommendation adopted sub nom. Lisa T. v. Kijakazi*, No. 5:21-CV-00068, 2023 WL 2632821 (W.D. Va. Mar. 24, 2023) (quoting *Arakas*, 983 F.3d at 96). The Fourth Circuit held the symptoms of fibromyalgia are "subjective." *Rice v. Kijakazi*, No. 1:23-CV-376, 2024 WL 4368974, at *5 (E.D. Va. Oct. 1, 2024) (quoting *Arakas*, 983 F.3d at 96).

8

Because fibromyalgia usually does not create objective evidence,[6] "the Fourth Circuit held that 'ALJs may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount' subjective statements, or medical opinions, 'regarding symptoms of fibromyalgia or some other disease that does not produce such evidence.'" *Zafar A. v. Kijakazi*, No. 4:22-CV-00017, 2023 WL 5994137, at *10 (W.D. Va. Sept. 15, 2023), *report and recommendation adopted*, No. 4:22-CV-00017, 2023 WL 11900184 (W.D. Va. Sept. 30, 2023) (quoting *Arakas*, 983 F.3d at 97). Also, the "Fourth Circuit further explained that because of the unique nature of fibromyalgia, in which symptoms 'wax and wane' such that a person 'may have bad days and good days,' ALJs may not rely on an isolated, particular day to assess symptoms." *Lauren S. v. O'Malley*, No. 2:23CV60, 2024 WL 3639380, at *11 (E.D. Va. Mar. 29, 2024) (quoting *Arakas*, 983 F.3d at 101). "In fact, physical examinations of fibromyalgia patients 'will usually yield normal results.'" *Sandra P. v. v. Comm'r*, No. 2:21-CV-127, 2022 WL 815463, at *7 (E.D. Va. Mar. 1, 2022), *report and recommendation adopted sub nom. Sandra P. v. Kijakazi*, No. 2:21-CV-127, 2022 WL 811295 (E.D. Va. Mar. 16, 2022) (quoting *Arakas*, 983 F.3d at 96).

Thus, "[l]ower courts have consistently applied *Arakas* to remand cases with insufficient analysis of subjective complaints related to fibromyalgia that meet the diagnostic criteria." *Sandra P.*, 2022 WL 815463, at *8 (E.D. Va. Mar. 1, 2022) (citing *India G. v. Kijakazi*, No. CV DLB-20-1704, 2021 WL 3930430, at *2 (D. Md. Sept. 1, 2021)). Remand was recommended when the ALJ "effectively require[ed] Plaintiff to provide medical evidence of her symptoms from fibromyalgia." *Deonn T. v. O'Malley*, No.

---

[6] "[A]s the Fourth Circuit recently noted, 'trigger points *are* the only 'objective' signs of fibromyalgia.'" *Janice L. v. Saul*, No. 4:19-CV-00045, 2021 WL 930693, at *6 (W.D. Va. Mar. 11, 2021) (quoting *Arakas*, 983 F.3d at 97) (emphasis original).

9

2:23-CV-03259, 2024 WL 2749369, at *9 (D.S.C. Apr. 30, 2024), *report and recommendation adopted sub nom. Turner v. O'Malley*, No. 2:23-CV-03259, 2024 WL 2747863 (D.S.C. May 29, 2024) (citing *Bryson v. Berryhill*, No. 1:20-CV-00169, 2021 WL 2517682, at *6 (W.D.N.C. June 18, 2021)).

Also, a district court in the Fourth Circuit remanded a Social Security case because the ALJ discussed a claimant's fibromyalgia with other impairments, and the ALJ relied on objective medical evidence to find claimant was not disabled, but the ALJ did not delineate whether the objective medical evidence supported the finding of non-disability with respect to the claimant's fibromyalgia *and* the claimant's other impairments or *only* the claimant's other impairments. *Treadway v. Comm'r of Soc. Sec.*, No. 1:23-CV-00250, 2024 WL 4341325, at *4 (W.D.N.C. Sept. 27, 2024); *see also Crystal S. v. Bisignano*, No. CV 24-1223, 2025 WL 2021742, at *4 (D. Md. July 18, 2025) (remanding because the ALJ discussed objective medical evidence in the same paragraph as the discussion about fibromyalgia).

### 3. The ALJ applied SSR 16-3p

Here, the ALJ applied SSR 16-3p. At step one of SSR 16-3p, the ALJ concluded "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 24. As noted above, the ALJ found Dawn's fibromyalgia constituted a severe impairment. R. 19.

At step two of SSR 16-3p, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. Also, at step two of SSR 16-3p, the ALJ noted Dawn had one to two flareups of fibromyalgia per month, R. 23; she endorsed pain from her fibromyalgia, R.

10

27; and she claimed her fibromyalgia had become more frequent, *id*.; relatedly, she claimed she could not "sit for longer than five or ten minutes before having to get up and change positions, stand for longer than ten or fifteen minutes before developing back pain, or walk farther than five or ten feet," R. 23; she "laid down approximately five times a day for 30 to 60 minutes at a time," *id*.; and because of chronic pain she could not stand, bend, lift, twist, or sit for more than 10 to 15 minutes.[7] R. 25.

### 4. The ALJ failed to apply *Arakas* in two ways

In this case, I find the ALJ failed to apply *Arakas* in two ways. Specifically, the ALJ made the following common errors when it came to evaluating fibromyalgia at step two under SSR 16-3p: (1) The ALJ required Dawn to provide objective medical evidence regarding the intensity, persistence, and limiting effects of her fibromyalgia, R. 29; and (2) the ALJ failed to separate his analysis and findings about her fibromyalgia from his analysis and findings of her other impairments.[8] *See generally* R. 22-30.

First, the ALJ erred by requiring Dawn to provide objective medical evidence regarding the intensity, persistence, and limiting effects of her fibromyalgia. R. 29. The

---

[7] The court notes the ALJ questioned Dawn about her fibromyalgia at the hearing. R. 46.

[8] As noted above, at step three of the five-step evaluation process, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ found Dawn's fibromyalgia did not meet or equal a listing:

> Fibromyalgia is not a listed impairment. Nonetheless, the specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist (see, SSR12-2p). In this case, the claimant is neurologically intact, retains the ability to ambulate effectively and perform fine and gross movements, and has no involvement of any other body system (See Listings 1.00, 11.00, and 14.00). Accordingly, there is no medically equivalent listing.

R. 20-21. However, even reading the ALJ's decision as a whole, *see Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) (citing *Fischer–Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005)), does not save the ALJ from his reversible errors. *See Jamoya A. v. O'Malley*, No. 3:22-CV-804, 2024 WL 899419, at *10 (E.D. Va. Feb. 12, 2024), *report and recommendation adopted*, No. 3:22-CV-804, 2024 WL 897606 (E.D. Va. Mar. 1, 2024) (recommending the case be remanded because the ALJ failed to apply *Arakas* regarding claimant's fibromyalgia).

ALJ discounted Dawn's subjective allegations about her fibromyalgia because "the claimant's allegations regarding the severity of her physical and mental health symptoms are without substantial support from the objective medical evidence of record as detailed above." *Id.* Significantly, *Arakas* mandates that "ALJs may not rely on objective medical evidence even as just one of multiple factors to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." *Hultz v. Bisignano*, No. 23-2259, 2025 WL 3623144, at *1 (4th Cir. Dec. 15, 2025) (citing *Arakas*, 983 F.3d at 97). In this case, I find the ALJ failed to apply *Arakas* because the ALJ required Dawn to provide objective medical evidence to substantiate her fibromyalgia symptoms, and this failure constitutes reversible error. *See Theresa M. v. Kijakazi*, No. CV 1:21-2660, 2022 WL 780780, at *19 (D.S.C. Mar. 15, 2022) (remanding because the ALJ failed to correctly apply *Arakas* to claimant's subjective allegations).

Second, the ALJ failed to apply *Arakas* because he did not separate his analysis and findings about Dawn's fibromyalgia from his analysis and findings about her other impairments. *See Crystal S.*, 2025 WL 2021742, at *4 (D. Md. July 18, 2025) (remanding because the ALJ discussed objective medical evidence in the same paragraph as the discussion about fibromyalgia). Because the ALJ did not demarcate his analysis and findings about Dawn's fibromyalgia from his analysis and findings about her other impairments the court is left to guess whether the ALJ's evaluation of her fibromyalgia was influenced by objective medical evidence. I find the ALJ erred by failing to clarify what parts of his decision were about Dawn's fibromyalgia versus her other impairments, and the ALJ did not articulate whether he considered objective medical evidence in his evaluation of her fibromyalgia. Thus, I find the ALJ's failure to compartmentalize his analysis and findings is a reversible error. *See Treadway*, 2024 WL 4341325, at *4

12

(remanding because the ALJ failed to delineate whether the objective medical evidence supported the finding of non-disability with respect to the claimant's fibromyalgia).

In summary, I find the ALJ's first reversible error was to require Dawn to provide objective medical evidence regarding the intensity, persistence, and limiting effects of her fibromyalgia. Also, I find the ALJ's second reversible error was that the ALJ did not separate his analysis and findings about Dawn's fibromyalgia from his analysis and findings about her other impairments.[9]

## CONCLUSION

For the above reasons, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be

---

[9] Plaintiff made several arguments on appeal. (Pl.'s Br. at 11-24.) Because the court determined that the ALJ erred in the ways discussed above, the court declines to further address Plaintiff's remaining arguments. However, upon remand, the ALJ should examine all of Plaintiff's arguments and re-evaluate the evidence as a whole. *See Hancock v. Barnhart*, 206 F.Supp.2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

construed by any reviewing court as a waiver of such objection, including the waiver of

the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit

the record in this matter to the presiding District Judge.

Entered: March 30, 2026

C. Kailani Memmer
United States Magistrate Judge

14